Statement by SOMERVILLE, J.:
The following statement of the case taken from the brief of counsel for appellant is not materially controverted by counsel for appellee, and is substantially correct:
"The complaint contained only one count, which was in the statutory form in an action for conversion of personal property. The property *Page 543 
sued for consisted of a large number of different articles, including the dredge boat Texas, an iron launch, a wooden launch, and a large quantity of machinery, boilers, engines, and the like. The testimony was entirely without dispute as to substantially all of the property, except as to the value of the property sued upon. It appeared from this testimony, without any controversy whatever, that the appellee, the People's Bank, sued out an attachment against William H. Flaherty, who was the father of the plaintiff, in the circuit court of Mobile county, and caused the same to be levied upon the property Which the complaint describes as the property of the appellant, Harry F. Flaherty. The property was sold by the sheriff under the attachment, and was purchased at the sheriff's sale by the defendant, the People's Bank, who in turn sold it to the Baker Sand Gravel Company, after being notified by the plaintiff and his father that the property levied upon belonged to the plaintiff and not to his father, who was the defendant in the attachment.
"The writ of attachment and the return of the sheriff showing this levy was introduced in evidence, and the defendant in its answers to interrogatories admitted, and the testimony of William H. Flaherty and A. L. Staples showed, that the attachment was levied upon the property; that the defendant became the purchaser, took possession of, and resold, the property.
"According to the testimony of the two Flahertys as to certain of these articles, the Gulf Wrecking Company had shipped them from New York to Mobile over the Mobile Ohio Railroad, and were not able to pay the freight, and they were about to be sold by the railroad for the freight, when it was agreed between the plaintiff and his father that the plaintiff would pay the freight and take over the property. A number of the articles were bought by him at a sheriff's sale. Only a small percentage of the articles sued for were purchased or acquired by plaintiff from the Gulf Wrecking Company, of which William H. Flaherty was president, or from William H. Flaherty himself. Both of the Flahertys testified that the balance of the property was purchased by the plaintiff from third persons, and paid for by him out of his individual funds, and there was no testimony tending in any way to show that William H. Flaherty, the defendant in attachment, ever had any possession of or claimed any interest in any of the other articles in question.
"The plaintiff, Harry F. Flaherty, testified to his ownership of this property, but he produced vouchers showing that he had bought and paid therefor, in most instances several years before it appeared that William H. Flaherty had contracted any indebtedness with the People's Bank.
"In only one instance was any property purchased from the father. Part of it had been seized, and was about to be sold by the railroad upon a lien for freight, and was purchased by the plaintiff for the freight which his father was unable to pay, and the balance was purchased by the plaintiff at a sheriff's sale under execution against the Gulf Wrecking Company.
"The dredge Texas and a large quantity of machinery and materials, which was the most valuable part of the property involved in this suit, was bought by the plaintiff, Harry F. Flaherty, from the Atlantic, Gulf Pacific Company with which neither the plaintiff's father nor the Gulf Wrecking Company had any connection, and the plaintiff produced the bill of sale from that company to himself showing the purchase of this property; a triple expansion Morris engine of considerable value, together with other items involved in this suit, the plaintiff bought from Gulf Barge Towing Company, Inc., with which the Gulf Wrecking Company and the plaintiff's father had no connection, and he produced the receipt to himself, showing payment for these articles. He bought a yawl from the same company, and produced the receipt of the superintendent showing payment therefor. He thereafter himself installed the two cylinder twenty-horse power motor which is involved in this suit. He bought from one Truex four full sets of acetylene and welding torches and gauges, and produced the receipt of Truex therefor. To this he added an acetylene generator. He bought from John B. Harvey the derrick foot and socket involved in the suit, and produced his receipt therefor. He bought an upright engine 8x10, hand winch derrick, two gasoline engines, one a Cadillac and the other a Pierce-Arrow, and two small hand pumps from the Mississippi river commission and paid freight on them from New Orleans to Mobile. He produced the receipt of the Louisville Nashville Railroad for the freight on these articles. He bought a barge or scow, an iron launch, the skiff, and the sail boat involved in this suit from M. N. Young-blood, and produced his receipt therefor. He purchased from M. Glazier twenty-six circle cog gears for swinging derrick and a lot of other material involved in the suit, and produced his canceled checks in payment therefor. He purchased from Turner Supply Company a duplex pump 10x15, a new Moore and Sly hoisting engine, and bought a 700 pound Worthington duplex hydraulic pump with other property involved in this suit, and produced his canceled checks in payment therefor. He bought from Gulf Refining Company three small tanks and other property involved in this suit, and produced his canceled checks in payment therefor. The fact that William H. Flaherty, defendant in attachment, had nothing whatsoever to do with the purchase of these articles is further corroborated by the testimony of William H. Flaherty."
Over plaintiff's objection, the defendant's witness — formerly its president — A. L. Staples, was allowed to testify that, when borrowing money from the bank, William H. Flaherty "claimed everything he had belonged to the Gulf Wrecking Company and W. H. Flaherty, and, when it came time to pay the note, everything he had belonged to H. F. Flaherty," the plaintiff.
The plaintiff, before the jury retired, requested the following charges, in writing, which were refused by the court:
"(1) The court charges the jury that, if they believe the evidence, they must find a verdict for the plaintiff.
"(2) The court charges the jury that, if they believe the undisputed evidence, then they must find a verdict for the plaintiff as to all of the *Page 544 
property described in the complaint as to which the jury may find from the evidence that the plaintiff purchased from a third person other than Mr. W. H. Flaherty, and had possession of under a claim of ownership, and that it was taken from his possession without his consent by the sheriff under a writ of attachment against Mr. W. H. Flaherty and sold to the defendant, and sold by the defendant to a third person.
"(3) The court charges the jury that, if the plaintiff obtained a part of the property in suit by purchase from third persons other than W. H. Flaherty, and had possession of it, claiming ownership, and the sheriff levied an attachment on it at the suit of the defendant, and sold it to the defendant, and the defendant sold it to another, then the defendant is liable to the plaintiff for the value thereof, wholly irrespective of whether the plaintiff paid for it when he bought it, or whether the consideration that he agreed to pay for it was large or small.
"(4) The court charges the jury that, if they believe the undisputed testimony in this case, they must find a verdict for the plaintiff as to all of the property described in the complaint which it appears from the testimony to the reasonable satisfaction of the jury that the plaintiff acquired from others than W. H. Flaherty.
"(5) The court charges the jury that, if they believe the undisputed evidence, and that the defendant, the People's Bank, took possession of, and sold, the property described in the complaint while it was being held by the plaintiff under a claim of ownership by virtue of purchases which he had made thereof, then the plaintiff would be entitled to recover from the defendant the value of all of the property so sold by the defendant, and which was obtained by the plaintiff from persons other than W. H. Flaherty, and would also be entitled to recover the value of the property which he so obtained from W. H. Flaherty, unless the jury was reasonably satisfied from the evidence that W. H. Flaherty, at the time that he sold said property to the plaintiff, Harry Flaherty, was in debt, and that he sold said property to his son with the intent to hinder, delay, and defraud his creditors, and, if the sales were made by W. H. Flaherty to Harry Flaherty without any purpose to hinder, delay, or defraud its creditors, or even if they were made by W. H. Flaherty for this purpose, if Harry Flaherty purchased the property for a fair consideration, and without notice of any fraudulent intent on the part of his father, then the plaintiff would be entitled to recover the value of the property which he purchased from his father, as well as the value of the other properties converted, for which he might be entitled to recover.
"The charges hereinabove set forth constituted all of the written charges which were asked by either party."
The jury found for the defendant, and judgment was rendered accordingly. Plaintiff appeals.
The issue presented on the trial of this case in the court below was whether the property levied on and sold by the defendant as the property of William H. Flaherty, or any part of it, was in fact the property of him, the defendant in execution, or was his property so far as the rights of creditors were concerned; or whether it, or any part of it, was the property of the plaintiff herein.
The testimony of the plaintiff, and of his father, William H. Flaherty, made out a perfect case of title and right of possession in the plaintiff, as to all of the property described in the complaint, and, if believed, entitled him to recover. This seems to be conceded by counsel for appellee, who say in their brief:
"It was admitted that, if the jury believe the evidence of appellant, Harry F. Flaherty, and of his father, William H. Flaherty, he was entitled to recover, but, if they reach the conclusion that these witnesses were unworthy of belief, and this was a frame-up between them to gouge the bank, a verdict should be rendered for defendant."
We have examined and sifted the evidence with very great care, and we do not find any material contradiction of the testimony of those two witnesses. It may be conceded that, with respect to the few items of the property which appear to have belonged to the former, William H. Flaherty, or to his company, the Gulf Wrecking Company, prior to its purchase or acquisition by plaintiff directly from him, the circumstances might permit an inference by the jury that, notwithstanding its ostensible change of ownership, it remained in fact the property of the defendant in execution, and subject to the payment of his debts.
But, with respect to the other items, the evidence is bare of anything tending to show it was bought for the father or his company, or that it was bought with his or their money, or that they ever had any interest whatever in it. As to that property, the only impediment, if any, in the way of plaintiff's right to recover it, was the incredibility of the testimony of plaintiff and his father. *Page 545 
We are therefore unable to avoid the conclusion that as to all of the property in suit, except what was acquired from William H. Flaherty, the plaintiff was entitled to recover, if the jury believed the evidence.
Charge 1, instructing for a verdict generally, if the jury believed the evidence, should have been given, as should also charge 3.
The other refused charges, on account of predicating recovery upon the jury's belief of "the undisputed evidence," have a tendency to mislead or mystify the jury as to the evidence to be looked to; and for that reason we would not put the trial court in error for their refusal.
For the errors noted, the judgment will be reversed, and the cause remanded for another trial.
Reversed and remanded.
ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.